UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH JOSEPH, BRADONBAY, LTD., and KWD, INC.,<br><br>                    Plaintiff,<br><br>            -against-<br><br>GNUTTI CARLO, S.p.A. and<br>WH INDUSTRIES DELAWARE, INC.,<br>d/b/a GNUTTI CARLO USA, INC.<br><br>                    Defendants.<br><hr>GNUTTI CARLO, S.p.A. and<br>GNUTTI CARLO USA, INC.,<br><br>                    Counter-Plaintiffs,<br><br>            -against-<br><br>KENNETH JOSEPH, BRADONBAY, LTD.,<br>and KWD, INC.,<br><br>                    Counter-Defendants. | Case No. 15 Civ. 8910 (AJN/BCM) |

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE

The United States District Court for the Southern District of New York presents its compliments to the Senior Master of the Court of Judicature, Queen's Bench Division and requests assistance in obtaining evidence to be used in a civil proceeding now pending before this Court.

The District Court requests that the Senior Master approve the Defendants' nomination of a practicing Barrister or such other qualified person as the Court deems fit, to act as Examiner for the purpose of obtaining evidence for trial from four witnesses.

This request is made pursuant to, and in conformity with, the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, to which both the United States and the United Kingdom are a party.

The Court considers that the evidence sought is directly relevant to the issues in dispute and is not discovery within the meaning of Article 23 of the Hague Evidence Convention, that is, discovery intended to lead to relevant evidence for trial. It is expected, based on existing timetables, that the United States District Court for the Southern District of New York will schedule trial on or about the fourth quarter of 2016.

The particulars of this Hague Evidence Request are as follows:

| | | |
|---|---|---|
| **1.** | **Sender:** | Honorable Alison J. Nathan<br>District Judge,<br>United States District Court for the Southern District of New York |
| | **Central Authority of the Requested State:** | COMPETENT AUTHORITY FOR ENGLAND AND WALES<br>Senior Master<br>Queen's Bench Division<br>ROYAL COURTS OF JUSTICE<br>Strand<br>London WC2A 2LL<br>UNITED KINGDOM |
| | | **On behalf of:** |
| | | THE CENTRAL AUTHORITY FOR THE UNITED KINGDOM |
| | | Her Majesty's Principal Secretary of State for Foreign Affairs |
| | | FOREIGN AND COMMONWEALTH OFFICE |
| | | King Charles Street |
| | | London SW1A 2AH, England, |
| | | UNITED KINGDOM |
| **3.** | **Person to whom the executed request is to be returned:** | Defendants' Legal Representative in the UK: |
| | | Steven Loble, Esq.<br>W Legal Limited<br>47 Red Lion Street<br>London<br>WC1R 4PF<br>Ref. SFL/ |

on behalf of:

Honorable Alison J. Nathan
District Judge
United States District Court for the Southern
District of New York

**4.**      **In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following requests:**

**5a.**    **Requesting Judicial Authority:**

Honorable  Alison J. Nathan
District Judge
United States District Court for the Southern
District of New York

**5b.**    **To the competent authority of:**    THE UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND

**6.**      **Names and addresses of the parties and their representatives:**

   **a.**    **Plaintiffs:**    **Bradonbay, Ltd., Kenneth Joseph, and KWD, Inc.**

**Represented in the US by:**

Robert J. Kipnees
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York  10020
          --AND--
65 Livingston Avenue
Roseland, New Jersey 07068
Tele:  973-597-6220
Fax:  973-597-6221
rkipnees@lowenstein.com

**Represented in England by:**

Mark Nicholson
Nicholsons Solicitors
23 Alexandra Road
Lowestoft, Suffolk  NR32 1PP
Tel:  01502 532 324
mnicholson@nicholsonslaw.com

|  |  |  |
|---|---|---|
| **b.** | **Defendants:** | **Gnutti Carlo S.p.A and Gnutti Carlo USA, Inc.** |

**Represented in the US by**:

John E. Zummo
Howard & Howard Attorneys PLLC
200 S. Michigan Avenue
Chicago, IL 60604
Tel: (312) 456-3425
jzummo@howardandhoward.com

Bonnie Lynn Chmil
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022
Tel: (212) 940-8800
bonnie.chmil@kattenlaw.com

**Represented in England by:**

Steven Loble, Esq.
W Legal Limited
47 Red Lion Street
London
WC1R 4PF
Ref.  SFL/

**7.      Nature and purpose of the proceedings and summary of the facts:**

**a.      SUMMARY OF BACKGROUND FACTS**

This case arises out of a Stock Purchase Agreement dated December 11, 2012 (the "SPA"), pursuant to which defendant Gnutti Carlo, S.p.A ("Gnutti") purchased non-party WH Industries, Inc. ("WHI") from plaintiffs Kenneth Joseph and KWD, Inc. for $30,500,000, plus or minus any working capital adjustments.  After the sale, WHI became Gnutti Carlo USA, Inc. ("Gnutti USA").  Following the closing of the SPA, the parties to the SPA negotiated post-closing working capital adjustments to the sale price.  At the conclusion of the negotiations, the parties executed a Settlement Agreement and Release, dated October 23, 2013 (the "Settlement Agreement").

Prior to the SPA, Bradonbay, LTD ("Bradonbay"), a United Kingdom company owned by plaintiffs Kenneth Joseph and KWD, Inc., provided assembly services to WHI in the UK. From January 1, 2010 to January 31, 2013, Bradonbay mistakenly charged WHI output value added tax ("VAT") on those services and remitted that VAT to HM Revenue & Customs ("HMRC"). WHI then reclaimed the tax it paid to Bradonbay from HMRC as input VAT (the "UK VAT Error"). The parties discovered the error in or about April 2013. The total amount of the error was (at that time) £507,754 (the "UK VAT Amount"). On July 16, 2013, through BDO, LLP ("BDO"), the parties jointly proposed to HMRC that the error should be resolved through internal adjustments to the parties' VAT accounts, as opposed to the normal mechanism which required Bradonbay to submit a claim to HMRC for repayment of the UK VAT Amount and to refund that amount to Gnutti USA (as the successor to WHI), who would then be required to return the UK VAT Amount back to HMRC (the "Joint Proposal").

On October 28, 2013, after the Settlement Agreement was executed, Bradonbay withdrew from the Joint Proposal and made a claim to HMRC to receive and retain a refund of the UK VAT Amount (i.e., without remitting the refund to Gnutti USA for repayment to HMRC). Bradonbay asserted that it could retain the refund of the UK VAT Amount because the UK VAT Amount was included in the post-closing adjustments addressed in the Settlement Agreement and therefore Gnutti USA had released any claim relating to the UK VAT Amount. Gnutti USA opposed Bradonbay's claim to receive and retain the UK VAT Amount to the extent that Gnutti USA would remain obligated to refund a corresponding amount to HMRC. On July 1, 2014, HMRC denied Bradonbay's claim. On July 17, 2014, Bradonbay initiated an appeal of HMRC's decision to the First Tier Tribunal (Tax Chamber) in the UK (the "UK Appeal"). On December 12, 2014, HMRC applied to have Gnutti USA added as a Second Respondent in the UK Appeal. Bradonbay opposed the application. Gnutti USA did not object to HMRC's application. On May 27, 2015, the Tribunal granted HMRC's application and Gnutti USA was

joined as a Second Respondent to the UK Appeal.  On October 15, 2015, as Second Respondent and pursuant to the directions of the Tribunal, Gnutti USA filed a Statement of Position in the UK Appeal.

On November 15, 2015, Plaintiffs commenced this action, alleging that Defendants breached the Settlement Agreement by trying to orchestrate the return to them and/or interfering with Bradonbay's collection of the UK VAT Amount.  The parties' respective positions are set forth below.

### b.    PLAINTIFFS' POSITION

Defendants, sophisticated business entities represented by counsel, knowingly and voluntarily entered into a Settlement Agreement with Plaintiffs after months of extensive and intensive negotiations.  The terms of the Settlement Agreement are unambiguous and expansive. The Settlement Agreement encompasses all claims that "exist by reason of, in relation to, pursuant to or in connection with" a post-closing working capital adjustment—*i.e.*, Working Capital Items—and thus constitutes a complete bar to those claims.  Although Defendants contend that the Settlement Agreement excluded the UK VAT Amount, Defendants were aware of, *inter alia*, the UK VAT Amount well before they entered the Settlement Agreement, independently investigated the UK VAT Amount, and negotiated and executed a complete release of their right to the UK VAT Amount.  Defendants' continued efforts to prevent Bradonbay from recouping the UK VAT Amount constitute a breach of the Settlement Agreement and a breach of the implied covenant of good faith and fair dealing.

### c.    DEFENDANTS' POSITION

This litigation centers entirely on Plaintiffs' efforts to claim and retain the UK VAT Amount.  As noted above, the UK VAT Amount results from technical error by plaintiff Bradonbay—incorrectly charging VAT on services to WHI.  Importantly, the error did not cause a loss to *any* party or HMRC, and *neither* party owes HMRC any taxes or is entitled to a refund

of any taxes. Rather, as Bradonbay acknowledged in the Joint Proposal (and its papers in the UK Appeal), the incorrectly charged VAT went around in a circle and back to WHI, leaving the parties and HMRC in the same position each would have been had the error not occurred. Nonetheless, as noted by Bradonbay in the Joint Proposal, the statutory mechanism to correct the error mandates that Bradonbay either:

(a)    "submit[] a claim for repayment of VAT …[and] … upon receipt of the repayment from HMRC, to refund the whole amount to GC [Gnutti USA, as the successor to WHI] by virtue of the reimbursement arrangements in Regulations 43A to 43G of the VAT Act of 1994 [,who] would then be obliged to adjust its input claim [pay that same amount back to HMRC], meaning that the funds would ultimately end up back in HMRC's hands"; or

(b)    "issue a 'VAT-only' credit note to GC [, which] would result in Bradonbay … having to refund that amount prior to obtaining the effect of [the] credit note through its VAT return."

As Bradonbay represented to HMRC, however, it did "***not have the banking facilities or finances to fund such a significant payment to GC***" and the statutory solution was not possible. Accordingly, Bradonbay suggested and implemented the Joint Proposal to HMRC.

Nonetheless, after the Settlement Agreement was executed, Bradonbay withdrew from the Joint Proposal and made a claim to HMRC to receive and retain the UK VAT Amount. Significantly, if Bradonbay received but retained a refund of the UK VAT Amount, Gnutti USA would still be obligated to pay that same amount back to HMRC. Thus, Bradonbay would receive approximately £500,000 (that was not owed to Bradonbay by HMRC or Gnutti USA) funded by Gnutti USA. Such a claim and unjust result is not permitted under the VAT Act of 1994 ("VATA"). Accordingly, Bradonbay based its claim on the Settlement Agreement, asserting that the agreement included adjustments for the UK VAT Amount and thus Mr. Joseph and KWD (Bradonbay was not a party to the agreement) had already provided consideration to Gnutti USA in exchange for, among other things, the UK VAT Amount.

HMRC denied Bradonbay's claim and rejected Bradonbay's assertion that the Settlement Agreement included adjustments for the UK VAT Amount and/or altered the statutory

reimbursement arrangements of the VATA.  In the midst of prosecuting the UK Appeal (of HMRC's decision), Plaintiffs initiated this action in which they re-cast Bradonbay's claim to the UK VAT Amount in the UK as a breach of the Settlement Agreement by Defendants.  In this litigation, Plaintiffs' theory shifted to address the fact that the agreement does not include any adjustments for the UK VAT Amount.  Specifically, Plaintiffs concede that the Settlement Agreement does not reference the UK VAT Amount but argue that the release therein "encompassed" *all* claims relating to *all* VAT.  Therefore, Plaintiffs assert that the release permits them to affirmatively pursue a claim to the UK VAT Amount while barring Defendants from contesting or defending that claim.  Plaintiffs then allege that Defendants breached the Settlement Agreement through their interactions with HMRC and participation in the UK Appeal by "trying to orchestrate the return to them and/or interfering with Plaintiffs' collection of the UK VAT Amount."  The relief sought is identical to the claim in the UK—the UK VAT Amount and/or an order declaring Bradonbay is entitled to the same.

Plaintiffs' claim fails for any one of the following reasons.  First, the Settlement Agreement unquestionably does not encompass the UK VAT Amount.  Second, even if all VAT was a working capital item that was subject to the release, the mutual release in the agreement (i.e., barring any claim relating to VAT) cannot be used as a platform for one releasor (Plaintiffs) to make that *very* claim while simultaneously barring the other releasor (Defendants) from defending that claim.  Accepting Plaintiffs' argument that the release bars all claims to VAT, *then Plaintiffs' own claim to the UK VAT Amount (including the claims in this litigation) are barred by the release.*  Finally, Defendants have not made and cannot (under UK law) make any claim to the UK VAT Amount that could constitute a breach of the release in the Settlement Agreement.

**d.    STAGE OF THE UK PROCEEDINGS**

After the instant litigation was initiated, Bradonbay applied to the Tribunal to stay the appeal proceedings pending resolution of the VAT-related claims in this Court.  HMRC and Defendants consented to the stay.

**e.    STAGE OF THE US PROCEEDINGS**

This action was commenced by the filing of a *Complaint* by Plaintiffs on November 15, 2015.  Pursuant to this Court's Order, all fact discovery must be completed on or before September 15, 2016.  Written discovery commenced on March 31, 2015 and fact witness depositions will proceed through September 15, 2016.  Based upon current timetables, trial is expected to take place in the fourth quarter of 2016.

**f.    THE UK WITNESSES AND DOCUMENTS**

The parties have disclosed a number of witnesses located in the United Kingdom who possess information and/or documents relevant to the claims in this matter.  Notably, the limited information and documents sought herein cannot be obtained completely from other sources. Indeed, virtually all of the occurrences underlying the UK VAT-related claims and defenses occurred in the UK.  The witnesses to those occurrences are located in the UK.  Moreover, many documents relating to the UK VAT Error and the UK VAT Amount are in the possession of BDO and HMRC and  may not be able to be authenticated without testimony from those witnesses.

The agreement of most of the below-mentioned witnesses to give evidence in this matter has been sought.   It is believed that some may provide testimony and/or documents voluntarily but that others, including HMRC, will likely give evidence only pursuant to a formal Request in conformity with The Hague Evidence Convention.

For the reasons set forth herein, the United States District Court for the Southern District of New York believes that the witnesses (whose contact details are given below) will be able to

provide evidence directly relevant to the main issues between the parties and without which the ends of justice could not be properly met. The United States District Court for the Southern District of New York believes that this evidence is not available from any other source.

(i)        <u>List of Subjects for Oral Examination</u>

The United States District Court for the Southern District of New York requests that the following individuals be ordered to attend for examination to give evidence about the following matters. All capitalized terms have the meanings ascribed to them in Section 7a above.

1.        Richard Wild
           Head of Tax Technical Team
           Chartered Institute of Taxation
           1st Floor, Artillery House
           11-19 Artillery Row, London SW1P 1RT
           United Kingdom

Mr. Wild is the former Director of VAT for BDO and was the individual at BDO who handled the Joint Proposal and represented the parties in connection therewith. The subjects of Mr. Wild's testimony will be:

(a)        the UK VAT Error and impact of the error on Bradonbay's and Gnutti USA's UK VAT positions;

(b)        the procedure under relevant VAT regulations to correct the UK VAT Error;

(c)        the amount of UK VAT currently subject to Bradonbay's claim to HMRC for a refund of Output VAT under Section 80 VATA 1994 (and the UK Appeal) and the specific input VAT claims made by WHI and Gnutti USA that form the basis of that amount;

(d)        communications with HMRC in furtherance of the Joint Proposal;

(e)        communications with Bradonbay and Gnutti regarding the Joint Proposal;

(f)        HMRC's response to the Joint Proposal;

(g)        the timing and/or scheduling of inspections by HMRC of Bradonbay's books and records in connection with the Joint Proposal;

(h)        Bradonbay's withdrawal from the Joint Proposal;

(i)        HMRC's response to Bradonbay's withdrawal from the Joint Proposal; and

(j)        authentication of documents if necessary.

2.     Nick Crickmore [and/or other designee(s) of HMRC]
       VAT Error Correction Team
       Queens Dock
       22 Kings Parade
       Liverpool AB10 1Zp
       United Kingdom

Mr. Crickmore is believed to be the individual who handled the above-referenced VAT error and who coordinated HMRC's consideration of the Joint Proposal. The subjects of Mr. Crickmore's (and/or other designee(s) of HMRC who have knowledge) testimony will be:

(a)    the UK VAT Error and impact of the error on Bradonbay's and Gnutti USA's UK VAT positions;

(b)    the timing of HMRC's inspections of Bradonbay's books and records in connection with the Joint Proposal;

(c)    when and how Bradonbay revoked its consent to the Joint Proposal;

(d)    the amount of UK VAT currently subject to Bradonbay's claim to HMRC for a refund of Output VAT under Section 80 VATA 1994 (and the UK Appeal) and the specific input VAT claims made by WHI and Gnutti USA that form the basis of that amount;

(e)    whether Gnutti USA made a claim to HMRC to recoup the UK VAT Amount;

(f)    communications between HMRC and BDO regarding the Joint Proposal; and

(g)    authentication of documents if necessary.

3.     Gareth Carter
       Walnut Cottage
       Hulver Street
       Beccles
       Suffolk NR 34 7UE
       United Kingdom

Mr. Carter was the managing director of Bradonbay in 2013. The subjects of Mr. Carter's testimony will be:

(a)    the UK VAT Error and impact of the error on Bradonbay's and Gnutti USA's UK VAT positions;

(b)    the timing of HMRC's inspections of Bradonbay's books and records in connection with the Joint Proposal;

(c)    when and how Bradonbay revoked its consent to the Joint Proposal;

(d)    communications between Bradonbay and HMRC regarding the Joint Proposal;

(e)    communications between Bradonbay and BDO regarding the Joint Proposal;

(f)    financial information provided by Bradonbay for the estimated Working Capital Schedule and Unpaid Transaction Schedules to the SPA;

(g)    the negotiation of the Settlement Agreement and the post-closing adjustments addressed therein;

(h)    Bradonbay's financial condition in 2013, including the amount of creditors' claims, and why Bradonbay believed it would be a "serious error" for Bradonbay to receive a refund of the UK VAT Amount;

(i)    Bradonbay's plans to dissolve in 2013; and

(j)    authentication of documents if necessary.

4.    Mark Nicholson
Nicholsons Solicitors
23 Alexandra Road
Lowestoft
Suffolk
NR 32 1PP

Mr. Nicholson communicated with HMRC regarding the Joint Proposal and represented Bradonbay in connection with its claim to the UK VAT Amount and the appeal pending in the UK. The subjects of Mr. Nicholson's testimony will be:

(a)    the UK VAT Error and impact of the error on Bradonbay's and Gnutti USA's UK VAT positions;

(b)    the procedure under relevant VAT regulations to correct the UK VAT Error;

(c)    communications with HMRC in furtherance of the Joint Proposal;

(d)    communications with Bradonbay and Gnutti regarding the Joint Proposal;

(e)    HMRC's response to the Joint Proposal;

(f)    the timing and/or scheduling of inspections by HMRC of Bradonbay's books and records in connection with the Joint Proposal;

(g)    Bradonbay's withdrawal from the Joint Proposal;

(h)    HMRC's response to Bradonbay's withdrawal from the Joint Proposal;

(i)    topics on which Mr. Nicholson provides testimony on Plaintiffs' behalf; and

(j)    authentication of documents if necessary.

(ii)    **List of Documents Sought for Production**

The United States District Court for the Southern District of New York also requests that the following produce the following documents, described below, which are in

their custody, possession or control, and to answer questions upon oral deposition regarding the

authenticity, purpose and meaning of the documents so produced:

1.      HMRC
        HM Revenue & Customs
        VAT Error Correction Team
        Queens Dock
        22 Kings Parade
        Liverpool AB10 1Zp
        United Kingdom

        (a)     the notice from Bradonbay to HMRC on or about October 28, 2013, withdrawing
                its consent to the Joint Proposal;

        (b)     calendars and diaries relating to HMRC's inspection of Bradonbay's books and
                records in connection with HMRC's consideration of the Joint Proposal;

        (c)     the emails in September and October of 2013 with Richard Wild of BDO and/or
                Mark Nicholson relating to the scheduling of HMRC's inspection of Bradonbay's
                books and records in connection with HMRC's consideration of the Joint
                Proposal;

        (d)     inspection reports reflecting HMRC's October 2013 inspection of Bradonbay's
                books and records in connection with HMRC's consideration of the Joint
                Proposal and the results thereof;

        (e)     HMRC's most recent calculation of the amount of UK VAT currently subject to
                Bradonbay's claim to HMRC for a refund of Output VAT under Section 80
                VATA 1994 (and the UK Appeal);

        (f)     the specific input VAT claims made by WHI and Gnutti USA that form the basis
                of UK VAT currently subject to Bradonbay's claim to HMRC for a refund of
                Output VAT under Section 80 VATA 1994 (and the UK Appeal); and

        (g)     the record of Gnutti USA's re-payment of the £52,080.59 claimed by WH
                Industries, Inc. in its November 2012 input VAT return on Bradonbay, Ltd.
                invoices.

2.      BDO, LLP
        16 The Havens
        Ransomes Europark
        Ipswich
        Suffolk
        IP3 9SJ

        (a)     BDO, LLP's file relating to its joint representation of the Parties in connection
                with the Joint Proposal;

(b)    communications between BDO, LLP and HMRC in furtherance of the Joint Proposal;

(c)    any other documents received by BDO, LLP from HMRC relating to the Joint Proposal;

(d)    communications between BDO, LLP and Bradonbay, Ltd. (or its agents) relating to the Joint Proposal; and

(e)    communications between BDO, LLP and Gnutti Carlo, USA (or its agents) relating to the Joint Proposal.

| | | |
|---|---|---|
| **8.** | **Evidence to be obtained:** | Defendants seek testimony and documents from the entities and individuals listed above in Section 7f. |
| **9.** | **Identity and addresses of persons to be examined:** | Please see list of witnesses itemized above. |
| **10.** | **Subject matter about which the witnesses will be examined:** | Please see list of subjects itemized above. |
| **11.** | **Documents or other property to be inspected:** | Please see list of documents itemized above. |
| **12.** | **Any requirement that the evidence be given on oath or affirmation and any specific form to be used:** | None. |
| **13.** | **Special methods or procedures to be followed:** | |

The United States District Court for the Southern District of New York respectfully requests assistance in appointing an English Examiner for the purpose of compelling oral testimony for use at trial from English witnesses.  The United States District Court for the Southern District of New York further requests that Defendants' counsel, Steven Loble, a solicitor with the London firm of W Legal Limited, arrange for the nomination of an Examiner in this matter.  This Request is made pursuant to, and in conformity with: Article 18 of The Hague Evidence Convention of March 18, 1970; the Evidence (Proceedings in Other Jurisdictions) Act 1975; the Local Rules of the United States District Court for the Southern District of New York;

and Rule 34 of the United States Federal Rules of Civil Procedure.

The United States District Court for the Southern District of New York further requests that the parties' representatives or their designees, a court reporter and a videographer be permitted to be present during the examination; that the representatives or designees be permitted to examine and cross-examine the witnesses directly; and that a court reporter and a videographer be permitted to make a verbatim record of the proceedings.

| | | |
|---|---|---|
| 14. | **Request for notification of the times and place for the execution of the Request and identity of the person to be notified:** | It is requested that testimony be taken at such place, date or time as ordered by the Senior Master and/or as otherwise scheduled by the representatives of Defendants and/or as otherwise agreed to by the witnesses and the respective representatives of the Parties. |
| | | Notice thereof should be made to Defendants' UK designee: |
| | | Steven Loble, Esq. W Legal Limited 47 Red Lion Street London WC1R 4PF Ref. SFL/ |
| 15. | **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request:** | None. |
| 16. | **Specification of privilege or duty to refuse to give evidence under the laws of the State of origin:** | Under the laws of the United States, a party has a privilege to refuse to give evidence if the evidence discloses the contents of a confidential communication between that party and an attorney for that party that was made for the purpose of obtaining legal advice. |
| | | Parties also enjoy limited privileges on other grounds not relevant here such as communications between physician and patient, psychotherapist and patient, husband and wife, or clergy and penitent. |
| | | US law also recognizes a privilege against |

criminal self-incrimination.

Outside the strict area of privilege, certain limited immunities are available that may place restrictions on the giving of evidence, such as the limited protection of documents created as the work product of attorneys during or in anticipation of litigation.

**17.**    **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by Defendants.**

**18.**    **Date of Request:**                   _____, 2016


_____
**19.**    **Signature and seal of the Requesting Authority:**    Honorable Judge,
UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW
YORK

This Court expresses its appreciation to you for your courtesy and assistance in this matter and states that, pursuant to the authority of 28 U.S.C. § 1782, it stands ready and willing to do the same for you in a similar matter when required.


Attachments: